

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ROBERT JACKSON, III | CIVIL ACTION NO. 05-0446-M |
| VS. | SECTION P |
| RICHARD STALDER, ET AL. | JUDGE JAMES |
| | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. § 1983) filed *in forma pauperis* on March 9, 2005 by *pro se* plaintiff Robert Jackson, III. Jackson is an inmate in the custody of the Louisiana Department of Corrections (LDOC); he is incarcerated at the Morehouse Parish Detention Center (MPDC), Collinston, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

On January 20, 2005, plaintiff, an LDOC prisoner, was transferred from the Richland Parish Detention Center (RPDC) to the MPDC. Upon his arrival he was provided numerous documents including a copy of the LDOC's regulations and the Administrative Remedies Procedures (ARP) in effect at MPDC. When he later inspected the documents he discovered that the pages explaining how to proceed from Step 1 through Step 3 of the ARP was missing from his intake packet. [Doc. 1, Statement of Claim, p. 1]

On January 30, 2005, plaintiff and his fellow inmates were advised that all inmates should shave and clip their fingernails in preparation for an inspection scheduled for February 1,

2005. Although plaintiff shaved and clipped his nails, his grooming was determined to be substandard, and, on February 1, he was written up for "Aggravated Disobedience." [*Id.*, p. 2]

On February 3, 2005 a disciplinary hearing was convened; plaintiff pled guilty to the charge. (Plaintiff contends that he admitted guilt because Lt. Brown, who had accused him of Aggravated Disobedience, was the hearing officer at the disciplinary hearing.) [*Id.* pp. 2-3]

On February 16 or 17, 2005 plaintiff was again accused of a rules violation; he was charged with having his identification tag flipped over. On February 23, 2005 plaintiff was convicted of this rules violation and sentenced to serve five days in lock-down. [*Id.*, p. 3]

Plaintiff contends that the lock-down cell holds four inmates who must remain in the cell 24 hours/day. He complains that the cell is cold and that the inmates are not permitted to talk to one another. He claims that all inmates in a cell may be punished even if only one inmate is in violation of the rule and therefore inmates are encouraged to "rat" on their fellow inmates.[*Id.* pp. 3, 5-6]

Plaintiff contends that he has been threatened with physical abuse by unspecified members of the MPDC staff should he continue to be in violation of the facility's regulations. [*Id.* p. 3]

Plaintiff contends that the MPDC law library is inadequate and that this hinders his efforts to collaterally attack his conviction. He claims that the law books are inadequate and the legal assistants are improperly trained. He claims that he does not know how to sufficiently allege facts in support of his Application for Post-Conviction Relief and that he fears that this inability will ultimately hinder his *habeas corpus* rights in federal court. [*Id.*, pp. 3-4]

Plaintiff claims that sometime between February 8-12, 2005 he spoke to inmate counsel

who "insufficiently informed [plaintiff] that on none of [his] ARP's [he] was not entitled to injunctive relief, [plaintiff] didn't have a leg to stand on with them, and [he] should not pursue these matters." [*Id.* p. 4]

Plaintiff contends that he complained to the Warden concerning the inadequacies of the law library and the Warden responded by stating that plaintiff's complaints "...are based of [sic] assumptions, because [plaintiff] have [sic] not actually entered the law library." Plaintiff concedes this fact but claims that his knowledge of the library's inadequacies is derived from conversations with his fellow inmates. [*Id.*, p. 4]

Plaintiff also complains that he is being charged sales tax for items such as postage stamps and tobacco purchased from the prison store. [*Id.*]

Plaintiff complains that he was permitted outdoor recreation on only three occasions between his arrival at MPDC on January 20, 2005, and the date he prepared his complaint, February 18, 2005. He claims that his dormitory does not circulate "fresh air (from outside)" and there is insufficient room for him to exercise and jog to prevent diseases and infections. (He contends that he has developed a boil and that his blood-sugar levels are abnormal.) [*Id.* pp. 4-5]

Plaintiff claims that he has been placed in a smoking dorm even though he does not smoke and that this has caused him to relapse and to resume smoking. [*Id.*, p. 5]

Finally, plaintiff contends that the MPDC policy dictates that upon an inmate's transfer to an LDOC facility, they are allowed to take only their underwear and a radio; all other personal property is discarded or destroyed. [*Id.*, pp. 5-6]

Plaintiff prays for "injunctive and prescriptive relief – that is all constitutional violations be ordered corrected." He also seeks punitive damages in an unspecified amount and requests

that his write-ups be removed from his record. [Doc. 1, Complaint, Paragraph V]

Plaintiff acknowledges the existence of a prison grievance procedure at MPDC. He claims to have filed grievances with respect to some, but not all, of his claims. He suggests that he should be excused from the exhaustion of administrative remedies requirement because "...after filing the 1st ARPs [he] was threaten [sic] by the Lt. Brown that any further filings and [he] would be subject to disciplinary actions for ARP procedure abuse." [Doc. 1, Complaint, Paragraph II] Plaintiff has provided copies of the three Administrative Remedies grievances he filed, the substance of each is paraphrased as follows:

(1) Administrative Remedy Procedure Request for Grievance Remedy dated January 21, 2005 wherein plaintiff complained that he was "...provided incomplete forms on how the Administrative Remedy Procedures works...specifically the forms I am missing are the ones that explain the steps I suppose [sic] to take in filing an A.R.P. from Step 1 until Step 3."

This ARP Grievance was answered by Warden Tappin, "Robert Jackson, III, you received a booking package that explains the Administrative Remedy Procedure, and you sign [sic] for it."

(2) Administrative Remedy Procedure Request for Grievance Remedy dated January 22, 2005 wherein plaintiff complained, "I am in great fear of my safety and well being here... because I am subject to be locked down in an isolation cell and physically harmed by the deputies if I violate a rule that I am not given written notice ... additionally I fear that the guards may seek retaliation for me filing this complaint..."

This grievance was answered, "This is true you are subject to go to Lock Down at any time for disciplinary reasons. Physical harm is not factual it's an assumption."

(3) Administrative Remedy Procedure Request for Grievance Remedy dated January 27,

2005 wherein plaintiff complained "I am being denied access to the courts in accords [sic] with Lewis v. Casey (1996) as the detention center does not have legal resources or people trained in the law to assist me on my collateral attack on my conviction and sentence. The law library is inadequately stocked as there are no Southern Reporters ...nor Federal Reporters. I could lose my right to adequately be heard in the courts..."

Wardin Tappin replied, "Mr. Jackson, first you must do a request to use the law library before making assumptions."

## LAW AND ANALYSIS

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous,[1] malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C.1915A; 28 U.S.C.1915(e)(2); *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). The same standards support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C.1997e(c)(1).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss such prisoner suits as frivolous based upon the complaint alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, particularly in the

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

context of dismissals under § 1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A complaint may not be dismissed under § 1915(d)(2)(B) "simply because the court finds the plaintiff's allegations unlikely." *Jolly v. Klein*, 923 F.Supp. 931, 942-43 (S.D.Tex.1996).

A civil rights plaintiff must support his claim(s) with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has provided a detailed description of his claims and each claim is supported by specific factual allegations; the court concludes that plaintiff has plead his best case and that the matter is susceptible of resolution.

### A. Threatened Physical Abuse.

Plaintiff contends that he has been threatened with physical abuse should he continue to violate the MPDC's prison regulations. The Prison Litigation Reform Act requires a physical injury before a prisoner can recover for psychological damages. 42 U.S.C. § 1997e(e) ("No federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury."). The Fifth Circuit teaches the "physical injury" required by section 1997e(e) "must be more than de *minimus* [sic], but need not be significant." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997).

Plaintiff has alleged no physical injury resulting from the alleged wrongful acts of the unnamed corrections officers who have allegedly threatened him with physical harm. He has alleged in general that "inmates are subject to physical harm and excessive force... for rules violations..." He has also alleged that he was "...threatened with such harm..." therefore he "...fear[s] for his safety and well being..." [Doc. 1, Addendum, p. 3]

Section 1997e(e) bars all of petitioner's claims for monetary damages as a result of the alleged threats since plaintiff has alleged no physical injury resulting from the alleged wrongdoing.

Further, the threats alleged are akin to verbal abuse and it has been clearly established that mere allegations of verbal abuse do not present an actionable section 1983 claim. *Bender v. Brumley*, 1 F.3d 271, 274 (5th Cir.1993). The threatening language and gestures of a custodial officer do not amount to a constitutional violation. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.); *cert. denied*, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983)(quoting *Coyle v. Hughs*, 436 F.Supp. 591, 593 (W.D.Okla.1977)). Consequently, these allegations lack an arguable basis in law and are frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

This does not end the inquiry, however, since in addition to a claim for monetary relief in the form of punitive damages, plaintiff's complaint seeks "injunctive and prescriptive relief – that ... all unconstitutional violations be ... corrected..." The Fifth Circuit has held that the physical injury requirement of § 1997e(e) does not apply to requests for declaratory or injunctive relief. *Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir.2001).

However, even if the physical injury requirement of § 1997e(e) does not bar consideration

of petitioner's claims for "injunctive and prescriptive relief" his requests are nonetheless barred by the standing limitation described in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). This court lacks jurisdiction to entertain such claims for injunctive relief because the plaintiff has not shown or even alleged a likelihood of future harm. Plaintiff's allegations[2] do nothing to establish a real and immediate threat that defendants would violate his rights in the future. *Cf. id.* at 105, 103 S.Ct. 1660.

Plaintiff's claim lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

B. Due Process/Prison Disciplinary Proceeding

Plaintiff claims that he was twice wrongfully convicted of rules violations and ultimately sentenced to serve five days in lock-down. In the wake of *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995), the ambit of a prisoner's potential Fourteenth Amendment due process liberty claims has been dramatically narrowed. A prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and these will normally consist of deprivations which clearly impinge on the <u>duration</u> of confinement. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir.1995)(quoting *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2294, 132 L.Ed.2d 418 (1995)).

Plaintiff lost no good time by virtue of the allegedly inadequate or unfair disciplinary proceedings which resulted in his five day stay in lockdown, therefore, he has no federally

---

[2] Plaintiff provides unsubstantiated and conclusory allegations in this regards; he contends, "...inmates are subject to physical harm and excessive force ... for rule violations... I have been threatened with such harm and I fear for my safety and well-being here..."

protected due process rights in connection with the proceedings. Consequently, plaintiff's claim against the defendants lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

C. Conditions of Confinement

Plaintiff complains of the conditions of confinement, both in lockdown and in the dormitory to which he has been assigned; his complaint suggests that these conditions of confinement are violative of his right to be free from cruel and unusual punishment and thus are in violation of the Eighth Amendment.

"The Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995). Specifically, a prisoner must allege facts which suggest that the prison officials' conduct resulted in the plaintiff being incarcerated under "conditions which [posed] an unreasonable risk of damage to [the prisoner's] future health." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir.2001). This "risk must be of such a level that today's society would not tolerate it." *Id.* In order to prevail on such a conditions of confinement claim, a plaintiff must plead facts which establish: (1) objectively, that the deprivations are sufficiently serious; and (2) subjectively, that the defendant prison officials knew of the deprivations but nevertheless have shown a "deliberate indifference" to the plaintiff's "health or safety." *Id.*; see also *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998).

In order to successfully plead "deliberate indifference," the plaintiff must allege facts (and

not conclusory allegations) which demonstrate that the defendants knew of but disregarded a substantial risk of serious harm to his health. *Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Further, he must plead facts which establish that the defendants: (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed. *Id.*

Plaintiff makes three conditions of confinement claims.

### 1. Exposure to Environmental Tobacco Smoke/Poor Ventilation

The vague, speculative, contradictory and conclusory allegations in plaintiff's complaint do not sufficiently state a claim for the excessive exposure to environmental tobacco smoke.[3] See *Helling v. McKinney*, 509 U.S. 25, 35-36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). He has not shown that the deprivations complained of are sufficiently serious; but, even had he done so, he has not alleged that the defendants were aware of the risk to his health and were nonetheless indifferent to his plight.

### 2. Conditions of Confinement – Lockdown Cell

Plaintiff's claim concerning the conditions of confinement in the MPDC lockdown fair no better. In his complaint plaintiff alleged that the lock down cell "holds up to four (4) people..." Having described the cell's maximum occupancy, he neglected to allege the cell's population during the five day period he was housed there. Otherwise, he complained that the cell was cold

---

[3] Plaintiff's allegations in this regard are incredible. He claims, "I have been placed in a smoking dorm and I do not smoke, but because of the fact I've learned that second hand smokers get cancer and other diseases related to smoking quicker than 1st hand smokers I relapse [sic] and started back smoking." His complaints that the "smokey dorm caused [him] distress, short of breathe [sic], and too relapse [sic]..."

11

and that he and his fellow detainees were not allowed to talk to one another. "While the temperature in ... lockdown may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment."*Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995). Additionally, since the conditions complained of lasted for only five days, there is some question as to whether or not such a short period of confinement may give rise to a valid Eighth Amendment violation. Of course, the Fifth Circuit has found violations of the Eighth Amendment for conditions lasting less then twenty-four hours, but in that case, the conditions were clearly more deplorable than those alleged herein by the plaintiff. (See *Palmer v. Johnson*, 193 F.3d 346, 354 (5th Cir.1999) (finding Eighth Amendment violation where inmates were herded into a small outdoor space, deprived of protection from excessive cold and wind, and provided no sanitary means of disposing of their waste, even though the conditions lasted approximately seventeen hours). Certainly, the length of time spent in offensive conditions should be taken into account. *Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell ... might be tolerable for a few days and intolerably cruel for weeks or months."); *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir.1998) (finding no Eighth Amendment violation where inmate was kept in filthy cell for only three days and was given cleaning supplies). Plaintiff's short stay in lock down under the conditions alleged does not rise to the level of cruel and unusual punishment.

3. Outdoor Recreation

Finally, plaintiff contends that he has been allowed outdoor recreation only three times

during the three week interval between his arrival at MPDC and the date he signed his pleadings. Plaintiff is reminded that only extreme deprivations violate Eighth Amendment. See *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992).

### 4. Summary of Conditions of Confinement Analysis

In order to prevail on these claims, plaintiff must allege (and ultimately prove) that the conditions complained of – inadequate ventilation and second hand smoke in the dorm, cold temperature in lockdown, outdoor recreation allowed only once a week – were "so serious as to deprive [plaintiff] of the minimal measure of life's necessities..." see *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)(quotation marks omitted). This he has not done.

Consequently, plaintiff's claim against the defendants lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### D. Sales Tax/Surcharge Commissary

Plaintiff complains that he is required to pay a sales tax on items purchased from the MPDC commissary.

These complaints do not rise to a constitutional level. Plaintiff has not suggested that he or other indigent inmates were denied access to the courts because the jail refused to mail pleadings to the court unless the postage, including the commissary surcharge or sales tax was paid.

Further, plaintiff has not offered any legal principal which would exempt him or his fellow inmates from paying sales tax. Clearly, the collection of such a tax is legal under Louisiana law. [See Opinions, Louisiana Attorney General, Nos. 01-143, 97-353, 77-636, all of which authorize the collection of sales tax in the prison commissary context.]

This claim too lacks an arguable basis in law and is therefore frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

E. Access to Courts

It is well established that inmates have a constitutionally recognized right to access the courts. See *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). However, such right is limited and simply requires "prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 356, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

To succeed on a claimed denial of access to courts, plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. See *id.*; *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (holding that, to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, plaintiff must demonstrate that the lack of access has prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. Id. at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). As the right of access to the courts is not a "freestanding right," it is necessary that plaintiff demonstrate actual injury resulting from the

alleged denial of access. *Id.* at 351. Without a showing of an actual injury, a civil rights plaintiff lacks standing to pursue claims of denial of access to courts. *Id.* at 349.

Plaintiff claims that "...the law library and/or legal assistance is inadequate to help [him] attack [his] conviction collaterally." He claims that "[t]he book collection is inadequate and the legal assistance is improperly trained in Louisiana R.S. [Revised Statutes], La. C.Cr.P. [Louisiana Code of Criminal Procedure] and the federal law of the 5th Cir and U.S. Supreme Court." Plaintiff claims that he is "...currently working on an application for Post-Conviction and [he] do[es] not know how to sufficiently state [his] facts to preserve [his] rights in the federal courts if the state deny [sic] me on the grounds I claim."

Plaintiff's claim is based entirely on information allegedly provided by other unnamed inmates and not on a first hand inspection of the MPDC's law library. Plaintiff complains of legal advice provided by inmate counsel sometime in mid-February, however, his disagreement with the conclusions reached by inmate counsel are insufficient to establish whether or not this inmate counsel or all other inmate counsel at MPDC are incompetent.

Plaintiff has alleged no factual basis for his claimed denial of access to courts.

Further, his claim of prejudice resulting from the alleged deficiencies is without merit. Plaintiff suggests that do to the supposed deficiencies he will be unable to "sufficiently state [his] facts" in his state Application for Post-Conviction Relief. The form supplied to Louisiana prisoners for their use in launching a collateral attack of their convictions advises the inmate to "State concisely <u>facts</u> supporting your claim that you are being held unlawfully. If necessary, you may attach extra pages stating additional claims and supporting facts. <u>Do not argue points of law.</u>" [See Uniform Application Post-Conviction Relief, Uniform Rules, Courts of Appeal, App.

A, 8 LSA-R.S.]

Under the circumstances, it appears unlikely that the complained of deficiencies will prejudice petitioner's collateral attack on his conviction.

This claim too lacks an arguable basis in law and is therefore frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### F. Threatened Loss of Personal Property

Plaintiff claims that MPDC's policy states that should a prisoner be transferred to another facility, he can only take with him a pair of underwear and a radio. All other property is discarded. Plaintiff claims that this threatened "destruction of property" is a violation of his rights. Once again, the standing limitation described in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), mandates denial of this claim. This court lacks jurisdiction to entertain plaintiff's claims for injunctive relief because the he has not shown or even alleged a likelihood of future harm. Plaintiff's allegations do nothing to establish a real and immediate threat that defendants would violate his rights in the future. *Cf. id.* at 105, 103 S.Ct. 1660. That he might be transferred from MPDC to any other facility is speculative at best.

### G. Exhaustion

The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e, was amended on April 26, 1996 by the Prison Litigation Reform Act (PLRA). As amended, § 1997e(a) makes the exhaustion requirement mandatory in prison conditions cases. Section 1997e(a) provides,

> (a) Applicability of Administrative Remedies – No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted.

This is a prison condition case, exactly the type of case which can best be resolved by the prison officials without resort to judicial action. With respect to plaintiff's complaint, the pleadings and exhibits establish that plaintiff failed to fully exhaust administrative remedies as to his claims concerning access to the courts and his generalized fear of retaliation by guards, and, that he failed to even attempt exhaustion with respect to his conditions of confinement claims, his threatened loss of property claim, his prison disciplinary proceeding claim, and his sales tax claim. Plaintiff is obviously aware of the administrative remedy procedure in general since he acknowledged the existence of such procedures at his present place of confinement.

Nevertheless, plaintiff suggests that he is exempt from the exhaustion requirement because his admission packet lacked sufficient information and because he feared retaliation should he continue to file grievances.

Under Federal law, plaintiff must exhaust the administrative remedy procedure before proceeding herein. The statute provides for no exceptions.[4] The statute precludes any further action on his claims until he has fully exhausted the administrative remedy procedure. See also *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998)(§1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a §1983 suit, rather than while the action is pending..." "[t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the

---

[4] See also *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), "... we hold that the PLRA's exhaustion requirement <u>applies to all inmate suits about prison life</u>, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (citation omitted)"

federal courts some relief from frivolous prisoner litigation."); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)(dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").

Similarly, plaintiff's fear of retaliation does not excuse his failure to exhaust. Although any inmate complaint can result in retaliation, the Supreme Court has held that Congress intended the exhaustion requirement of the PLRA to extend to all inmate claims, "whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). If an inmate's allegation of a secondhand retaliatory threat was enough to allow the inmate to begin litigation without properly filing grievances, the PLRA's exhaustion requirement could be easily circumvented by all inmates. A general fear of retaliation is not an exception to the PLRA's exhaustion requirement. Therefore, plaintiff's claim of an exemption for his failure to exhaust based on fear of retaliation must fail.

Plaintiff might be excused from failing to further pursue remedies with regards to his claims that he was denied access to courts and that he fears for his safety; however, as has been shown in the discussion above, those claims are manifestly frivolous and dismissal on that basis is recommended. With respect to all of his remaining claims, those too are frivolous, but are subject to dismissal for the additional reason that plaintiff has failed to exhaust administrative remedies with respect to these claims.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

In the alternative,

**IT IS RECOMMENDED** that plaintiff's claims concerning access to courts and threats of physical violence be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and that all remaining claims, including, his claims concerning the conditions of confinement, the disciplinary proceedings, the imposition of sales tax, and the threatened loss of property be dismissed without prejudice due to plaintiff's failure to exhaust all available administrative remedies prior to filing suit.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

19

**THUS DONE AND SIGNED** in Chambers at Alexandria, Louisiana, this 30th day of June, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE